**UNITED STATES BANKRUPTCY COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**

| In re: | Case No. 19-06473 |
|---|---|
| | **Chapter 11** |
| **JAHRED DANTE CARLISE and** | **Judge Marian F. Harrison** |
| | |
| **NATALIE NICOLE CARLISE,** | **DISCLOSURE STATEMENT** |
| | **DESCRIBING CHAPTER 11 PLAN** |
| Debtors. | |

## TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A.    Purpose of This Document . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing . . . . . . 4
        1.    Time and Place of the Confirmation Hearing . . . . . . . . . . . . . . . . . . . 5
        2.    Deadline for Voting For or Against the Plan . . . . . . . . . . . . . . . . . . . . 5
        3.    Deadline for Objecting to the Confirmation of the Plan . . . . . . . . . . . . 5
        4.    Identity of Person to Contact for More Information Regarding the Plan. . 5
    C.    Disclaimer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
II.   **BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    A.    Description and History of the Debtors' Business . . . . . . . . . . . . . . . . . . . . . 6
    B.    Management of the Debtor Before and After the Bankruptcy . . . . . . . . . . . . 6
    C.    Events Leading to Chapter 11 Filing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.    Significant Events . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . 7
        1.    Bankruptcy Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        2.    Other Legal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
        3.    Actual and Projected Recovery of Preferential or Fraudulent Transfers. 7
        4.    Procedures Implemented to Resolve Financial Problems . . . . . . . . . . . 7
        5.    Current and Historical Financial Conditions . . . . . . . . . . . . . . . . . . . 8
III.   **SUMMARY OF THE PLAN OF REORGANIZATION** . . . . . . . . . . . . . . . . . . . . . 8
    A.    What Creditors and Interest Holders Will Receive Under the Proposed Plan. . . . 8
    B.    Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1.    Administrative Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        2.    Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    C.    Classified Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        1.    Classes of Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        2.    Classes of Priority Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . 11
        3.    Classes of General Unsecured Claims . . . . . . . . . . . . . . . . . . . . . . . . . 11
        4.    Class(es) of Interest Holders . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    D.    Means of Effectuating the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        1.    Funding for the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        2.    Post-Confirmation Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        3.    Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    E.    Risk Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    F.    Other Provisions of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        1.    Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . . . . . . 13
            a.    Assumptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1

|  |  | b. | Rejections | 14 |
|  |  | 2. | Changes in Rates Subject to Regulatory Approval | 14 |
| ` |  | 3. | Retention of Jurisdiction | 14 |
|  | G. | Tax Consequences of Plan |  | 15 |
| **IV.** | **CONFIRMATION REQUIREMENTS AND PROCEDURES** |  |  | **15** |
|  | A. | Who May Vote or Object |  | 16 |
|  |  | 1. | Who May Object to Confirmation of the Plan | 16 |
|  |  | 2. | Who May Vote to Accept/Reject the Plan | 16 |
|  |  |  | a. What is an Allowed Claim/Interest | 16 |
|  |  |  | b. What Is an Impaired Claim/Interest | 17 |
|  |  | 3. | Who is Not Entitled to Vote | 17 |
|  |  | 4. | Who Can Vote in More Than One Class | 18 |
|  |  | 5. | Votes Necessary to Confirm the Plan | 18 |
|  |  | 6. | Votes Necessary for a Class to Accept the Plan | 18 |
|  |  | 7. | Treatment of Nonaccepting Classes | 18 |
|  |  | 8. | Request for Confirmation Despite Nonacceptance by Impaired Class(es). | 19 |
|  | B. | Liquidation Analysis |  | 19 |
|  | C. | Feasibility |  | 21 |
| **V.** | **EFFECTS OF CONFIRMATION OF PLAN** |  |  | **23** |
|  | A. | Discharge |  | 23 |
|  | B. | Revesting of Property in the Debtors |  | 23 |
|  | C. | Modification of Plan |  | 23 |
|  | D. | Post-Confirmation Status Report |  | 24 |
|  | E. | Quarterly Fees |  | 24 |
|  | F. | Post-Confirmation Conversion/Dismissal |  | 24 |
|  | G. | Final Decree |  | 25 |
| **VI.** | **SUPPORTING DECLARATIONS** |  |  | **26** |
|  | EXHIBIT A - LIST OF ALL ASSETS |  |  | 26 |
|  | EXHIBIT B – DEBTORS' CURRENT MONTHLY INCOME AND EXPENSES |  |  | 27 |
|  | EXHIBIT C – DEBTORS' POST-CONFIRMATION INCOME & EXPENSES. |  |  | 28 |
|  | EXHIBIT D - LIST OF GENERAL UNSECURED CLAIMS |  |  | 30 |

2

# I.

# INTRODUCTION

Jahred and Natalie Carlise are the Debtors in a Chapter 11 bankruptcy case. On October 4, 2019, Debtors commenced a voluntary bankruptcy case by filing a Chapter 13 petition under the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et seq. They converted their case to a Chapter 11 on January 6, 2020. Chapter 11 allows the Debtors, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan"). The Plan may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both. Debtors are the party proposing the Plan. THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PROPOSED PLAN.

This is a reorganization plan. In other words, the Proponents seek to reorganize their debts and accomplish payments under the Plan by using Debtors' regular monthly income. The Effective Date of the proposed Plan is 45 days after confirmation.

## A. Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)    **WHO CAN VOTE OR OBJECT,**

(2)    **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT**

3

**COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

(3) **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

(4) **WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

(5) **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6) **WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.     Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE COURT LATER CONFIRMS THE

4

PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

### 1. Time and Place of the Confirmation Hearing

The hearing where the Court will determine whether or not to confirm the Plan will take place at a yet to be determined date telephonically on AT&T conference line 888-363-4749, access code 4511038#. Notice will be given regarding the date and time of this hearing.

### 2. Deadline For Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

Steven L. Lefkovitz

618 Church St., Ste. 410

Nashville, TN 37219.

Your ballot must be timely received or it will not be counted.

### 3. Deadline For Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon Steven L. Lefkovitz, counsel for Debtors, by the date and time set by the Clerk's office.

### 4. Identity of Person to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Steven L. Lefkovitz, (615) 256-8300, 618 Church St., Ste. 410, Nashville, TN 37219.

### C. Disclaimer

The Debtors have made no separate appraisal of the Debtors' real and personal property assets but the Debtors believe that values contained herein are accurate. The Debtors believe this to be a fair and equitable estimate of the value of their assets as of October 4, 2019. The

5

information contained in this Disclosure Statement is provided by the Debtors. The Plan

Proponents represent that everything stated in the Disclosure Statement is true to the Proponents'

best knowledge.  The Court has not yet determined whether or not the Plan is confirmable and

makes no recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

**A.      Description and History of the Debtors' Business**

The Debtors are individuals.

Jahred Carlise is currently employed with Global Inc. as a site engagement liaison.

Natalie Carlise is employed at All Home Health Care as a full time caregiver.  Much of their debt

was accrued from student loans.  Debtors have a daughter who requires special care.  Natalie

Carlise has had to adjust her employment opportunities in order to provide availability and care

for their daughter, which created a struggle with cash flow.

Since the filing, the Debtors were also hit with the Covid-19 pandemic, which stalled

their income.  They also must be careful to protect their daughter who is considered high-risk.

Despite these challenges, they are now both bringing in income and are realizing positive

financial gains.

**B.      Management of the Debtors Before and After the Bankruptcy**

The Debtors managed their own affairs prior to the bankruptcy and will continue to

manage their affairs after the bankruptcy.

**C.      Events Leading to Chapter 11 Filing**

Here is a brief summary of the circumstances that led to the filing of this Chapter 11 case:

The primary reason the Debtors had to file was because of income loss and a mortgage loan modification that took longer than expected. The Debtors filed a Chapter 13, but believed they were over the debt limits due to student loans.

The loss of income created a situation where the Debtors were no longer able to service the existing debt obligations. Debtors filed this bankruptcy in order to reorganize their debts and also give them time to create a steady income stream.

**D.      Significant Events During the Bankruptcy**

**1.      Bankruptcy Proceedings**

The following is a chronological list of significant events which have occurred <u>during</u> this case:

An Order Granting Debtors' Motion to Convert to Chapter 11 from Chapter 13 was signed January 6, 2020.

An Agreed Order Resolving US Trustee's Motion to Dismiss Case was entered May 28, 2020. The Order set deadlines for filing a disclosure statement and plan.

The Court has approved the employment of the following professionals: Steven L. Lefkovitz, counsel for Debtors.

**2.      Other Legal Proceedings**

The Debtors are not involved in any non-bankruptcy legal proceedings.

**3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers**

There is no projected recovery of preferential or fraudulent transfers in this case.

**4.      Procedures Implemented to Resolve Financial Problems**

To attempt to fix the problems that led to the bankruptcy filing, Debtors have implemented the following procedures: The Debtors have regular, steady employment. Their

7

steady paychecks and rental income will provide the necessary income to successfully fund their plan.

### 5. Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit A.  See also the Debtors' financial history set forth in the monthly operating reports.

## III.

## SUMMARY OF THE PLAN OF REORGANIZATION

### A. What Creditors and Interest Holders Will Receive Under The Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

### B. Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class.

### 1. Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

There are no administrative claims under the plan except for any quarterly fees owed by the Debtors that may become due between now and the confirmation of the case. Debtors

8

estimate that two more quarters of fees will become due before the case can be confirmed and close. Additionally there may be unpaid attorney's fees for Steven L. Lefkovitz, Counsel for the Debtors-in-possession, which are subject to the approval of the Court. These fees would not be due on the effective date and Counsel for the Debtors will agree to defer payments in a mutually agreed upon payment plan.

### 2. Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the date of filing for relief in this case.

There are no Section 507(a)(8) priority tax claims under the Plan.

### C. Classified Claims and Interests

### 1. Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtor's secured pre-petition claims and their treatment under this Plan:

9

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| 3-A | Secured claim of:<br>• Name = Lakeview Loan Servicing<br>• Collateral description = 1505 23rd Ave. N. Nashville, TN 37208<br>• Collateral value = $161,100.00<br>• Priority of security int. = First<br>• Principal owed = $169,652.70 plus accrued interest and attorney fees<br>• Total claim amount = $169,652.70<br>• Pre-petition arrears: $3,693.79<br>• Gap Payments: $13,078.12 thru 12/2020 | N | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval<br>• Pymt amt/interval<br><br>• Begin date<br>• End date<br>• Interest rate<br>• Total payout<br>• Treatment of Lien | = Monthly<br><br>= $1,188.92+ $279.53 pro rata arrears and gap pmts for 60 mos.<br>= Dec. 1, 2020<br>= Contract<br>= 4.25%<br>= Contract<br><br>= Retained until completion of payments |
| 3-B | Secured claim of:<br>• Name = Capital One Auto<br>• Collateral description = 2014 Honda Odyssey<br>• Collateral value = $17,700.00<br>• Priority of security int. = First<br>• Principal owed = $23,769.67<br>• Total claim amount = $23,769.67<br>• Total Unsecured amount = $6,069.67 | N | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval<br>• Pymt amt/interval<br>• Begin date<br>• End date<br>• Interest rate<br>• Total payout<br>• Treatment of Lien | = Monthly<br>= $325.00<br>= Dec. 1, 2020<br>= Nov. 1, 2025<br>= 3.25%<br><br>= $19,500.00<br><br>= Retained until completion of payments |

| 3-C | Secured claim of:<br>• Name = Capital One Bank<br>• Collateral description = 2015 Ford F-150<br>• Collateral value = $24,950.00<br>• Priority of security int. = First<br>• Principal owed = $28,982.21<br>• Total claim amount = $28,982.21 | N | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval<br>• Pymt amt/interval<br><br>• Begin date<br>• End date<br>• Interest rate<br>• Total payout<br>• Treatment of Lien | = Monthly<br><br>= $524.00 for 60 mos.<br><br>= Dec. 1, 2020<br>= Nov. 1, 2025<br>= 3.25%<br>= $31,440.00<br>= Retained until completion of payments |

### 2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code Sections 507(a)(1), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

There are no Sections 507(a)(1), (4), (5), (6), and (7)  priority unsecured claims under this Plan.

### 3. Class of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  The following chart identifies this Plan's treatment of the class containing all of Debtors' general unsecured claims:

11

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|
| 4-A | General unsecured claims<br><br>• Total amount of claims = $205,273.96 | Y, Claims in this class are entitled to vote on the plan. | • Pymt interval<br>• Pymt amt/interval<br>• Begin date<br><br>• End date<br><br>• Interest rate<br>• Total payout | = Monthly<br>= $50.00<br>= Dec. 1, 2020<br>= Nov. 1, 2025<br><br>= 0.00%<br>= $3,000.00 |

Monthly payments shall be made on a pro rata basis based on the value of each unsecured claim. Any plan payments returned to the Debtors by unsecured creditors shall become property of the reorganized Debtors.

If any creditors are determined to have non-dischargeable claims, those claims shall be paid pro rata as part of the general unsecured pool. Debtors shall be required to make additional arrangements to pay the balance of the debts after the 60 months of unsecured payments are made.

**4.     Class(es) of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.

The Debtors are individuals in this case.

**D.     Means of Effectuating the Plan**

**1.     Funding for the Plan**

The ongoing Plan payments will be funded by the following: Wife's employment with All Home Health Care, Husband's employment with Global, Inc., and rental income.

### 2.    Post-confirmation Management

The Debtors shall be responsible for post-confirmation management.

### 3.    Disbursing Agent

Debtors shall act as the disbursing agents for the purpose of making all distributions provided for under the Plan. The Disbursing Agents shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

### E.    Risk Factors

The proposed Plan has the following risks: The Plan, due to its nature of being funded over time, maintains a possibility of default if Debtors are unable to realize their current projected level of monthly income.

### F.    Other Provisions of the Plan

### 1.    Executory Contracts and Unexpired Leases

### a.    Assumptions

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtors under this Plan:

(i)    Bill Dorris and Associates for a residential lease;

(ii)   Sprint for a cell phone contract.

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtors.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for

objecting to the confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

**b.      Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:

(i)      All executory contracts and leases not explicitly assumed above.

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

THE BAR DATE FOR FILING A PROOF OF CLAIM WAS MAY 6, 2020. Any claim based on the rejection of a contract or lease will be barred unless the claim is made within thirty (30) days of the order confirming the Chapter 11 Plan.

**2.      Changes in Rates Subject to Regulatory Commission Approval**

The Debtors are not subject to governmental regulatory commission approval of its rates.

**3.      Retention of Jurisdiction.**

The Court shall retain jurisdiction for purposes of granting a discharge to Debtors, determining any and all objections to the amounts of claims, applications for compensation and expenses, to enforce the provisions of the Plan, to correct any defect, cure any omissions or reconcile any inconsistency in the Plan, and to determine such other matters as may be provided for in the Order of the Court confirming the Plan.

G.    **Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtors.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The Debtors are unaware of any tax consequences which the Plan will have on the Debtors' tax liability.

# IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7

15

liquidation, and whether the Plan is feasible. These requirements are <u>not</u> the only requirements for confirmation.

## A. Who May Vote or Object

### 1. Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### 2. Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

#### a. What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS MAY 6, 2020. A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is ordinarily deemed allowed if (1) it is scheduled on the Debtors' schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

16

### b.      What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponents believe that classes 3 and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that all other classes are unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponents' characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponents have incorrectly characterized the class.

### 3.      Who is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE,

YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4. Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5. Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

### 6. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

### 7. Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements

18

except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

### 8. Request for Confirmation Despite Nonacceptance by Impaired Class(es)

The party proposing this Plan will ask the Court to confirm this Plan by cramdown on impaired classes 3 and 4 if any of these classes do not vote to accept the Plan.

Please note that the proposed Plan treatment described by this Disclosure Statement cannot be crammed down on the following classes: All classes other than 3 and 4. AS A RESULT, IF ANY OF THESE CLASSES DOES <u>NOT</u> VOTE TO ACCEPT THE PLAN, THE PLAN WILL <u>NOT</u> BE CONFIRMED.

## B. Liquidation Analysis

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total

allowed unsecured claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons: Creditors will receive at least as much as they would in a Chapter 7 liquidation case.

Below is a demonstration, in balance sheet format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a Chapter 7 liquidation.

| ASSETS VALUE AT LIQUIDATION VALUES: | |
|---|---|
| CURRENT ASSETS a. Cash on hand | $ 3,888.92 |
| TOTAL CURRENT ASSETS | $ 3,888.92 |
| FIXED ASSETS a. Household goods, Jewelry, Hobby Equipment b. 401k/Security Deposit c. Automobiles d. Real Property | $ 1,120.00 $ 2,709.91 $ 42,650.00 $ 161,100.00 |
| TOTAL FIXED ASSETS | $ 207,579.91 |
| **TOTAL ASSETS AT LIQUIDATION VALUE** | **$ 207,968.83** |
| **Less:** Secured creditor's recovery | $ 216,334.91 |
| **Less:** Chapter 7 trustee fees and expenses | $ 4,000.00 |
| **Less:** Chapter 11 administrative expenses | $ 0.00 |
| **Less:** Priority claims, excluding administrative expense claims | $ 0.00 |
| **Less:** Debtor's claimed exemptions | $ 6,819.51 |

20

| | |
|---|---|
| (1) Balance for unsecured claims | $ 0.00 |
| (2) Total amount of unsecured claims | $ 205,273.96 |

**ESTIMATED % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: = ⎯0%**
**ESTIMATED % OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN: = ⎯1 %**

**1/**      Note:    The deficiency portion of a secured recourse claim must be added to the total amount of unsecured claims.

**2/**      Note:    If this percentage is greater than the amount to be paid to the unsecured creditors on a "present value basis" under the Plan, the Plan is not confirmable unless Proponent obtains acceptance by every creditor in the general unsecured class.

## C.     Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtors will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| | |
|---|---|
| Cash Debtor will have on hand by Effective Date | $ 7,388.92 |
| **To Pay:** Administrative claims | - 0.00 |
| **To Pay:** Statutory costs & charges | - 0.00 |
| **To Pay:** Other Plan Payments due on Effective Date | - 0.00 |
| Balance after paying these amounts…............ | $ 7,388.92 |

21

The sources of the cash Debtors will have on hand by the Effective Date, as shown above are:

| | |
|---|---|
| $ 3,888.92 | Cash in DIP Account now |
| + 3,500.00 | Additional cash DIP will accumulate from net earnings between now and Effective Date |
| + 0.00 | Borrowing |
| + 0.00 | Capital Contributions |
| + 0.00 | Other |
| $ 7,388.92 | **Total** |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent has provided financial statements which include both historical and projected financial information. Please refer to the monthly operating reports and the summary of their income and expenses since the pendency of this case in Exhibit B for the relevant financial statements. YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay $2,370.00 each month. Debtors' financial projections demonstrate that Debtors' will receive approximately $2,370.00 per month in net income after necessary living expenses and post-confirmation taxes have been paid. The final Plan payment is expected to be paid in the winter of 2025 for debts not classified as long-term. Debtors' actual current income and expenses during the pendency of the case are attached below in Exhibit B. Debtors show a monthly net profit of approximately $255.27. However, the

22

Debtors' projected income and expenses are attached as Exhibit C. The Plan Proponents contend that Debtors' financial projections are feasible.

## V.

## EFFECT OF CONFIRMATION OF PLAN

### A.    Discharge

Pursuant to 11 U.S.C. §1141(d)(5), in a case in which the Debtors are individuals, Confirmation of the Plan does not discharge any debt provided for in the Plan until the Court grants a discharge on completion of all payments under the Plan. However, §1141(d)(5)(B) provides that at any time after the Confirmation of the Plan, and after notice and a hearing, the Court may grant a discharge to the Debtors before completing all payments under the Plan if (1) the value, as of the Effective Date of the Plan, of property actually distributed under the Plan on account of each Allowed Unsecured Claim is not less than the amount that would have been paid on such Claim if the estate of the Debtors had been liquidated under Chapter 7 on such date, and (2) modification of the Plan under Section 1127 is not practicable. To determine the amount that would have been paid if the estate of the Debtors had been liquidated under Chapter 7 on the Effective Date of the Plan, please refer to the liquidation analysis contained in the Disclosure Statement.

### B.    Revesting of Property in the Debtor

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtors.

### C.    Modification of Plan

The Proponent of the Plan may modify the Plan at any time before confirmation. However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated and (2) the Court authorizes the

23

proposed modifications after notice and a hearing.

**D.      Post-Confirmation Status Report**

The Debtors shall furnish post-confirmation quarterly reports by the 15th of the month

following the end of the quarter to the United States Trustee's office and to any creditors

requesting same in writing from the Debtors' counsel. This obligation of the Debtors shall

continue after the Final Decree is entered in this matter until all Plan payments have been

completed.

**E.      Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid

to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing

under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in

accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of

dismissal or conversion to chapter 7.

**F.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under §

1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court

orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been

property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest

in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but

only to the extent that relief from stay was not previously authorized by the Court during this

case.

The order confirming the Plan may also be revoked under very limited circumstances. The

Court may revoke the order if the order of confirmation was procured by fraud and if the party in

interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of

the order of confirmation.

**G.     Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the

Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall

File a motion with the Court to obtain a final decree to close the case.

Date: October 2, 2020.

/s/ Steven L. Lefkovitz, No. 5953
STEVEN L. LEFKOVITZ
Counsel to the Debtor
618 Church Street, Suite 410
Nashville, TN  37219
(615) 256-8300 fax (615) 255-4516
Email slefkovitz@lefkovitz.com

# VI.

## SUPPORTING DECLARATIONS

## EXHIBIT A – LIST OF ALL ASSETS

| Market Value | Secured Value | Equity | Description |
|---|---|---|---|
| **$161,100.00** | $169,652.70 | $0.00 | 1505 23rd Ave N., Nashville, TN |
| **$17,700.00** | $17,700.00 | $0.00 | 2014 Honda Odyssey |
| **$24,950.00** | $28,982.21 | $0.00 | 2015 Ford F-150 |
| **$360.00** | $0.00 | $360.00 | Household goods and furnishings |
| **$760.00** | $0.00 | $760.00 | Clothing/Costume Jewelry/Pet |
| **$3,888.92** | $0.00 | $3,888.92 | Cash on hand in DIP account |
| **$1,959.91** | $0.00 | $1,959.91 | 401K |
| **$750.00** | $0.00 | $750.00 | Security Deposit |
| | | | |
| **$211,468.83** | $216,334.91 | $7,718.83 | Totals |

**Liquidation Value of Estate**

| | |
|---|---|
| **Net Value of Estate** | $7,718.83 |
| **Less Homestead Exemption** | $0.00 |
| **Less Personal Property Exemption** | $6,819.51 |
| **Less Trustee Fees** | $4,000.00 |
| **Less Priority Creditors** | $0.00 |
| **Amount Available for Unsecured Creditors** | $0.00 |

26

**EXHIBIT B – DEBTORS' INCOME & EXPENSES DURING PENDANCY OF THE BANKRUPTCY CASE**

| | Jan-20 | Feb-20 | Mar-20 | Apr-20 |
|---|---|---|---|---|
| Income | $8,937.14 | $2,591.45 | $13,962.75 | $9,074.10 |
| Expense | $6,286.40 | $6,237.94 | $9,372.56 | $8,399.85 |
| Profit | $2,650.74 | ($3,646.49) | $4,590.19 | $674.25 |

| | May-20 | Jun-20 | Jul-20 | Aug-20 |
|---|---|---|---|---|
| Income | $17,198.96 | $7,966.86 | $12,168.85 | $6,973.99 |
| Expense | $11,905.89 | $12,302.53 | $10,339.83 | $11,986.93 |
| Profit | $5,293.07 | ($4,335.67) | $1,829.02 | ($5,012.94) |

| | | | Average | |
|---|---|---|---|---|
| | | | $9,859.26 | |
| | | | $9,603.99 | |
| | | | $255.27 | |

# EXHIBIT C – DEBTORS' POST-CONFIRMATION INCOME AND EXPENSES

## MONTHLY FAMILY BUDGET

|  |  |  | Current Budget |
|---|---|---|---|
| Date of Budget: |  |  | 10/2/2020 |

**EXPENSES**

| | | | |
|---|---|---|---|
| Rent/Mortgage Payment: | | | $ 1,500.00 |
| Utilities: | | | |
| Electric: | $ | 300.00 | |
| Water: | $ | 100.00 | |
| Heat: | $ | 0.00 | |
| Telephone/Internet: | $ | 65.00 | |
| Other: Cell Phone | $ | 206.00 | |
| **Total Utilities:** | $ | 671.00 | $ 671.00 |
| Food: | | | $ 1,100.00 |
| Clothing/Laundry: | | | $ 200.00 |
| Personal care products: | | | $ 200.00 |
| Recreation: | | | $ 56.00 |
| Medical & Dental Expenses: | | | $ 150.00 |
| Transportation: | | | $ 550.00 |
| Insurance (not deducted from wages): | | | |
| Auto: | $ | 180.00 | |
| Life: | $ | - | |
| Home: | $ | - | |
| Renters: | $ | - | |
| Other: | $ | - | |
| **Total Insurance:** | | | $ 180.00 |
| Taxes (not deducted from wages): | | | $ - |
| Home Maintenance: | | | $ 50.00 |
| Other: | | | $ - |
| Other: Pet Expenses | | | $ 60.00 |
| Other: | | | $ - |
| **TOTAL MONTHLY EXPENSES:** | | | **$ 4,717.00** |

**INCOME** | | | Current Budget*
Debtor's Gross Income: | | | $ 7,088.00
Spouse's Gross Income: | | | $    500.00

| Payroll Deductions: | Jahred | Natalie | |
|---|---|---|---|
| Payroll Taxes: | $    689.00 | $ 60.00 | |
| 401(k) contributions: | $    212.00 | 0.00 | |
| Other: Insurance | $    440.00 | 0.00 | |
| Other: Life, FSA, Disability | $      0.00 | 0.00 | |
| Total Payroll Deductions: | **$ 1,341.00** | $60.00 | $    1,401.00 |

Other Regular Income:
| Support Alimony: | $          - | | |
|---|---|---|---|
| Pension/SS/VA: | $          - | | |
| Other: Rent | $    900.00 | | |
| Total Other Regular Income: | | | $  900.00 |

**TOTAL MONTHLY INCOME:** | | | **$ 7,087.00**

**SUMMARY:**
**Total Monthly Income (from above):** $  7,087.00
**minus Total Monthly Expenses (from page 1):** $ (4,717.00)
**Equals Monthly Surplus:** $  2,370.00

**Dividend to Unsecured Creditors (%)** 1%

29

## EXHIBIT D - LIST OF GENERAL UNSECURED CLAIMS

| CREDITOR | SCHEDULED AMT | POC AMT | % | PAYMENT | TOTAL PAYOUT OVER 60 MONTHS |
|---|---|---|---|---|---|
| Capital One Auto | | $6,069.67 | 0.029569 | $1.01 | $60.70 |
| Capital One Bank | | $3,597.16 | 0.017524 | $0.60 | $35.97 |
| Capital One Bank | | $11,876.39 | 0.057856 | $1.98 | $118.76 |
| Citibank, NA | | $1,173.43 | 0.005716 | $0.20 | $11.73 |
| Credit First | $1,039 | | 0.005062 | $0.17 | $10.39 |
| CW Nexus Credit Card | | $1,925.79 | 0.009382 | $0.32 | $19.26 |
| Discover | | $1,842.97 | 0.008978 | $0.31 | $18.43 |
| Discover | | $727.60 | 0.003545 | $0.12 | $7.28 |
| First Financial Invest | | $3,273.05 | 0.015945 | $0.55 | $32.73 |
| Harpeth Financial | | $827.66 | 0.004032 | $0.14 | $8.28 |
| Harpeth Financial | | $5,232.43 | 0.02549 | $0.87 | $52.32 |
| Jefferson Capital Sys | | $940.22 | 0.00458 | $0.16 | $9.40 |
| Jefferson Capital Sys | | $308.86 | 0.001505 | $0.05 | $3.09 |
| Jefferson Capital Sys | | $3,371.06 | 0.016422 | $0.56 | $33.71 |
| Jefferson Capital Sys | | $1,382.08 | 0.006733 | $0.23 | $13.82 |
| LVNV Funding | | $1,883.03 | 0.009173 | $0.31 | $18.83 |
| LVNV Funding | | $322.41 | 0.001571 | $0.05 | $3.22 |
| LVNV Funding | | $3,086.37 | 0.015035 | $0.51 | $30.86 |
| LVNV Funding | | $4,188.81 | 0.020406 | $0.70 | $41.89 |
| LVNV Funding | | $2,172.99 | 0.010586 | $0.36 | $21.73 |
| Mariner Finance | | $1,840.25 | 0.008965 | $0.31 | $18.40 |
| Merrick Bank | | $2,081.60 | 0.010141 | $0.35 | $20.82 |
| Midland Credit Mgmt | | $1,777.78 | 0.008661 | $0.30 | $17.78 |
| Midland Credit Mgmt | | $4,143.22 | 0.020184 | $0.69 | $41.43 |
| Midland Credit Mgmt | | $4,277.40 | 0.020838 | $0.71 | $42.77 |
| Midland Credit Mgmt | | $1,904.57 | 0.009278 | $0.32 | $19.05 |
| Midland Credit Mgmt | | $3,049.56 | 0.014856 | $0.51 | $30.50 |
| Navient CFC | | $15,173.36 | 0.073918 | $2.53 | $151.73 |
| Navient PC Trust | | $4,054.79 | 0.019753 | $0.68 | $40.55 |
| Navient PC Trust | | $9,456.40 | 0.046067 | $1.58 | $94.56 |
| Navient PC Trust | | $9,202.75 | 0.044832 | $1.53 | $92.03 |
| Navient PC Trust | | $4,990.58 | 0.024312 | $0.83 | $49.91 |
| Navient PC Trust | | $41,320.48 | 0.201294 | $6.89 | $413.20 |
| Navient PC Trust | | $4,430.80 | 0.021585 | $0.74 | $44.31 |
| Portfolio Recovery | | $3,807.12 | 0.018547 | $0.63 | $38.07 |
| SYNCB/Gap | $3,079 | | 0.014999 | $0.51 | $30.79 |

| | | | | | |
|---|---|---|---|---|---|
| SYNCB/Walmart | $1,420 | | 0.006918 | $0.24 | $14.20 |
| Tennessee Quick Cash | | $1,056.65 | 0.005148 | $0.18 | $10.57 |
| VL Funding c/o Navient | | $3,599.72 | 0.017536 | $0.60 | $36.00 |
| VL Funding c/o Navient | | $29,366.95 | 0.143062 | $4.89 | $293.67 |
| | **$5,538** | **$199,735.96** | 1.0000 | $34.21 | $2,052.74 |

TOTAL   **$205,273.96**